PROGRESSIVE SECURITY INSURANCE COMPANY AS SUBROGEE OF KIZZY MAYS AND SYLVESTER EDWARDS

VERSUS

COCA-COLA BOTTLING COMPANY UNITED-GULF COAST, LLC AND NICHOLAS R. SILVIO

* NO. 2020-CA-0289

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2018-01038, SECTION "A"
Honorable Monique G. Morial, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Dale N. Atkins)

Anthony J. Milazzo, Jr.
Charles V. Giordano
HEBBLER & GIORDANO, L.L.C.
3501 N. Causeway Blvd., Suite 400
Metairie, LA 70002
    COUNSEL FOR PLAINTIFF/APPELLEE

Philip A. Costa
Lance S. Osterndorf
650 Poydras Street, Suite 1460
New Orleans, LA 70130
    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**OCTOBER 14, 2020**

DLD
JCL
DNA

Defendants, Coca-Cola Bottling Company United Gulf-Coast, LLC and Nicholas R. Silvio (hereinafter "Coca-Cola" or "defendants") appeal a judgment rendered in favor of Progressive Security Insurance Company (hereinafter "Progressive"), awarding Progressive, as subrogee to the rights of its insured, Kizzy Mays, $2,577.34, plus costs and judicial interest. For the reasons that follow, we affirm the judgment.

**FACTS:**

On September 8, 2017, Kizzy Mays, Progressive's insured, was involved in a vehicle accident with a truck owned by Coca-Cola and driven by Nicholas Silvio, an employee of Coca-Cola. According to Ms. Mays, she was travelling on Caton Street approaching the intersection with Elysian Fields Avenue, when she observed a Coca-Cola truck stopped in the middle lane of Caton, a two-way street.[1] Ms. Mays testified that she pulled on the right side of the truck and made a complete stop at the corner. She testified that she believed the truck was going to proceed

---

[1] Caton Street is a two-way street that runs between St. Anthony Avenue and Elysian Fields Avenue. There are only two lanes, one running in each direction. The pictures submitted into evidence do not indicate that the street is clearly marked with a center line.

1

across the lanes of Elysian Fields to the median and turn left. She said when the truck began the right turn "it took [her] by surprise because I wasn't expecting it to turn." She assumed that the back part of the trailer hit her car. Ms. Mays also testified that a man who claimed to have witnessed the accident, approached her where she and Mr. Silvio were stopped and told her he was an eyewitness to the accident. He gave her his phone number, which Ms. Mays claimed she gave to Officer Garcia-Vargas.

On cross-examination, Ms. Mays testified that she was stopped in the "turning lane." She explained that she and the truck were in two separate lanes of travel. She did not believe that the Coca-Cola truck was in the wrong lane to make a right turn, rather, she stated: "He was in the perfect lane of traffic to go across Elysian Fields to go across the median and turn left, not to turn right." She stated that the Coca-Cola truck started to turn when it was in the median-side lane of Elysian Fields and that is when it struck her vehicle. She insisted that she did not start to turn onto Elysian Fields, but was still at the stop sign on Caton Street when the impact occurred.

Mr. Silvio testified that his vehicle was completely in the right lane of Caton Street, when he stopped at the stop sign. He testified that if a vehicle was directly behind him, he would not be able to see it with his side mirrors. He proceeded onto Elysian Fields into the center of the far left lane and began his right turn. He testified that he did not "swing wide" to the left to make the turn. Mr. Silvio testified that as he turned, he looked in his passenger side mirror and realized that

2

the trailer of his truck had struck another vehicle that was to his right on Elysian Fields. He proceeded a block or two to a commercial parking lot where he could safely stop his truck. Ms. Mays followed him to the parking lot. She then called the New Orleans Police Department to report the accident.

Officer Juan Garcia-Vargas testified that he spoke with both drivers where they had stopped a block or two from the accident scene. He assumed that because the Coca-Cola truck was a long vehicle it had to have been at least partially in the left, oncoming lane of Caton to make a right turn onto Elysian Fields. He based his drawing of the accident scene contained in the police report solely from the parties' statements; he did not visit the scene. He determined that Mr. Silvio was at fault for the accident and issued him a citation for failure to exercise reasonable vigilance. On cross-examination, Officer Garcia-Vargas admitted that if the accident had occurred as depicted in his drawing, Ms. Mays' vehicle would have had damage to her left headlight and front bumper. He testified that had Ms. Mays told him there was another vehicle behind her (a potential eyewitness), he would not have put that in his report because it was irrelevant.

Gentry Rambo testified that he was an eyewitness to the accident. He testified that Ms. Mays was completely to the right of the Coca-Cola truck and there was another car between him and Ms. Mays. All three cars were in the "far right lane." He did not know if Ms. Mays was stopped or if she had begun to turn onto Elysian Fields. Mr. Rambo first stated that the Coca-Cola truck was in the

3

middle lane, but then corrected himself stating that the truck was actually in the on-coming traffic lane (the left lane).

Following the accident, Ms. Mays' car was towed to a repair shop authorized by Progressive.

Keith Head, an adjuster for Progressive, testified that he based his decision to authorize payment of Ms. Mays' damages on the police report and a conversation he had with the eyewitness, whose name Ms. Mays provided to him.

On February 5, 2018, Progressive instituted this lawsuit against Coca-Cola seeking to recover the monies it paid to Ms. Mays. Following trial, the trial court found in favor of Progressive and awarded it $2,577.34, plus costs and judicial interest. The trial court issued written reasons for its judgment and explained that it found Nicholas Silvio's negligence caused the accident. Coca-Cola appeals that judgment.

**DISCUSSION:**

Coca-Cola presents several issues for review by this Court. First, it claims that the trial court erroneously awarded Progressive the amount it paid to repair Ms. Mays' car as the amount paid was never proven through competent testimony or documentary evidence. Specifically, there was no documentary evidence, such as cancelled checks issued to the repair shop, offered into evidence.

Coca-Cola asserts that it did not stipulate as to the amount of damages. At trial, the following discussion took place:

> THE COURT:
> Do we have any stipulations?
> MR. MILAZZO [representing Progressive]:
> We agreed on the policy and the damages.
> MR. COSTA [representing Coca-Cola]:
> I can't agree on the damages.
> THE COURT:
> Just on the amount? The property damage? There's no personal injury claim, right?
> MR. COSTA:
> Right.
> THE COURT:
> So what evidence on the property damage? Do you have an estimate for repairs?
> MR. MILAZZO:
> I have the estimate, Your Honor. I have the payment document. I have a couple of photographs of the vehicle that was damaged. The adjuster is going to testify regarding the policy.
> THE COURT:
> In terms of the estimate, the estimate is the estimate and the cost of repairs is the cost of repairs. It's been stipulated to the dollar amount. It's not admitted as to any kind of liability.
> MR. MILAZZO:
> It's admitting to the amount of the damages.
> THE COURT:
> That's fine.

Based on our reading of the dialogue, Coca-Cola did stipulate to the amount of damages. Accordingly, we find no merit to this assignment of error.

In its second assignment of error, Coca-Cola argues that the judgment rendered is fatally flawed in that it does not state the specific nature and amount of the recovery awarded with certainty and precision. It further argues that it was error for the trial court to award the damages to Progressive, rather than to the insured, Ms. Mays.

The judgment in this case states that "[j]udgment is rendered in favor of plaintiff, Progressive Insurance Company ("Progressive"), and against Defendants, Coca-Cola Bottling Company United-Gulf Coast, LLC and Nicholas R. Silvio, in the amount of $2,577.34 plus court costs and judicial interest from the date of judicial demand."

A valid judgment must contain proper decretal language and must include: 1) the identity of the specific party or parties to whom the judgment is in favor; 2) the identity of the party or parties against whom the judgment is rendered; and, 3) the specific relief granted or denied. The specific relief must be discernible from the face of the judgment, without reference to extrinsic sources such as reasons for judgment or a jury verdict form. If there are multiple parties, the judgment must specifically identify the name or names of the party or parties to which the judgment applies. If the judgment is a money judgment, it must specify the exact amount awarded. A third party, that is, someone unfamiliar with the facts of the case, should be able to discern who the judgment is in favor of, who the judgment is against, and what the judgment does. *See* L.C.C.P. arts. 1841, 1918; *Moulton v. Stewart Enterprises, Inc.,* 17-0243, pp. 4-5 (La.App. 4 Cir. 8/3/17), 226 So.3d 569, 572.

The judgment rendered is clear and concise. Coca-Cola's argument as to the form of the judgment is without merit.

To prove payment to the repair shop, Progressive entered into evidence, Plaintiff's Exhibit #2. This exhibit indicates that Progressive made a payment of

6

$2,077.34, to Paint & Body Experts of Slidell, Inc., and two payments to Real Towing, in the amounts of $85.00 and $165. These amounts total $2,327.34. The trial court, however, awarded Progressive $2,577.34, which includes the amount of Ms. Mays' deductible.

Progressive argues that pursuant to the subrogation clause of the policy in question, it is entitled to recover the amount of the deductible paid by its insured, unless they are specifically instructed not to do so by the insured. The policy provides subrogation authorization for the insurer to collect the amount it paid as well as the amount paid by its insured. The policy states, in part:

> If we elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy. (Emphasis in original.)

As Progressive was authorized by contract to collect the insured's portion of the stipulated damages, this assignment of error is without merit.

Coca-Cola's third assignment of error states that the trial court erred in making an award to Progressive for repair of Ms. Mays' car when there was no competent testimony introduced to prove the dollar amount of the damages. We find this assignment without merit, for the reasons assigned above. Counsel for Coca-Cola stipulated as to the amount of damages, thus clearly acknowledging that the vehicle was damaged. Additionally, photographs of the damage to Ms. Mays' vehicle were introduced without objection. As Progressive was authorized to collect its insured's portion of the stipulated damages, we find this assignment of error to be without merit.

In its last assignment of error, Coca-Cola argues that the trial court erred in finding Coca-Cola's employee driver at fault for the accident. Specifically, the trial court erred in relying on the testimony of the investigating officer and his accident report, and the testimony of a man who claimed to have been an eyewitness to the accident.

Findings of fact and judgments on credibility of witnesses will not be disturbed on review, absent a finding by the appellate court that those findings are manifestly erroneous or clearly wrong. *See Stobart v. State through Dept. of Transp and Development,* 617 So. 2d 880, 882 (La. 1993), and its progeny. As the Supreme Court recently stated, [applying the manifest error standard of review], "the reviewing court may not reverse, even if convinced that it would have weighed the evidence differently." *McDonald v. City of Bastrop,* 19-01949, p. 1 (La. 2/26/20), 289 So.3d 1029, citing *Stobart, supra.*

While we agree that Ms. Mays' testimony and Mr. Silvio's testimony varied greatly, we cannot say that the trial court was manifestly erroneous or clearly wrong in finding that Mr. Silvio, acting in the course and scope of his employment with Coca-Cola, was at fault for the accident.

Accordingly, we affirm the judgment of the trial court.

**AFFIRMED**